DOWD, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Leatherworks Partnership, et al., | ) | |
| | ) | CASE NO. 4:03 CV 2333 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Louis T. Boccia, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

On May 17, 2005, the Court conducted a status conference in this case and a companion case,

Leatherworks Partnership , et al. v. Berk Realty, Inc., et al., 4:04 CV 784.  The above-captioned case

has been stayed since this Court's order of August 24, 2004.  See Doc. No. 54.  At that time, the

Court had under consideration a motion for judgment on the pleadings which argued for abstention.

Instead of abstaining, at that time the Court decided instead to stay the case.  The Court hereby lifts the

stay and now revisits its decision on abstention.

## I.  BACKGROUND

It will be helpful for purposes of this decision to set forth some of the background of this case,

which was filed on November 14, 2003.  Two months passed with no activity until an amended

complaint was filed on January 13, 2004.  The amended complaint (hereafter "complaint") asserts

diversity jurisdiction as to most claims and parties, as well as federal question jurisdiction as to the

Section 1983 claim (Count IX) against the City of Girard and its Mayor.

(4:03 CV 2333)

The Court was finally able to conduct the Case Management Conference on May 19, 2004.

At that conference, the Court raised the question of whether any abstention doctrine would apply.  The

Court's concern was based on a very extensive procedural history in various state courts.  This history

is outlined in considerable detail in the Memorandum Opinion and Order of August 27, 2004 (Doc.

No. 54); however, a short synopsis of the state court proceedings is given here to provide a backdrop

for the instant opinion.

On December 15, 1993, Leatherworks Partnership "(the Owner") purchased from Berk

Realty, Inc. the former Ohio Leather Company facility ("the property"), a four-story 76,000 square-

foot brick structure situated in Girard, Ohio on 26.5 acres of land that is zoned heavy industrial.  On

October 25, 1995, an arson fire occurred at the vacant property.[1]  The Girard Fire Department

extinguished the fire and, because of the hazardous substances on the property, issued an emergency

order authorizing Boccia Construction to raze the building.  In less than two months, Boccia

Construction ran up charges of $124,507, which were invoiced to both the City and the Owner.  On

April 30, 1996, the City paid Boccia Construction $12,019 for the first two days of its work, leaving an

outstanding balance of $112,488 on the invoice.

On May 31, 1996, the City of Girard filed suit against the Owner in Trumbull County Court of

Common Pleas demanding that the Owner remove all debris from the property and pay compensatory

damages in the amount of $140,000 for the City's costs relating to the fire and the demolition.  On the

---

[1]  The Owner had not yet begun to make use of the property; but the former owner was still storing titanium and other hazardous items on the property.

(4:03 CV 2333)

day of the scheduled bench trial, an oral settlement was purportedly reached and transcribed by the

court reporter.  The Owner allegedly consented to a judgment in favor of the City for $75,000 and in

favor of Boccia Construction for $124,507.  The Owner claims that its attorney was never authorized

to reach such a settlement and, in fact, never informed the Owner of the settlement.  Because the

Owner did not make the payments contemplated by the settlement agreement, on March 25, 1997, the

trial court entered an order styled as a consent judgment awarding $75,000 to the City and $124,507

to Boccia Construction.  Boccia Construction filed a judgment lien against the property for $124,507;

apparently that lien remains on the property.

Claiming to have an enforceable final judgment, by letter dated February 26, 1999, the City

demanded that the Owner either surrender the property to the City[2] or face a second lawsuit which

would include a claim for several thousands of dollars in civil penalties for failure to pay the judgment.

On June 14, 1999, the City did file a second lawsuit against the Owner in Trumbull County Court of

Common Pleas, seeking to have the judgment in the first case declared valid and asserting one count for

foreclosure based on the $75,000 judgment in that first lawsuit and another count for penalties under a

City nuisance ordinance.[3]

On June 7, 2001, after this 1999 foreclosure action had been pending about two years, the

Owner filed a motion in the 1996 injunction action seeking to vacate the judgment of March 27, 1997.

[2] The City hoped for, and eventually received, a US EPA grant of $200,000 which depended
on the City owning the property.

[3] This suit also sought to set aside a security lien against the property relating to a loan from
one partner to another.

3

(4:03 CV 2333)

On August 1, 2001, the Owner also filed a motion to set aside the settlement agreement on the ground

of fraud.  These motions were denied on November 6, 2001 and the Owner immediately appealed, but

the Eleventh District Court of Appeals dismissed for lack of a final appealable order.

In the meantime, discovery was proceeding in the second case and, on the basis of that

discovery, the Owner moved to amend its answer to add a constitutional defense, namely that the

City's claim under its ordinance was barred by the Equal Protection Clause of the U.S. Constitution

and the Ohio Constitution.  This motion was denied.

A final appealable order was finally entered in the first state case on December 23, 2003, about

one month after the November 14, 2003 filing of the instant case and, on January 28, 2004, the Owner

filed a notice of appeal to the Eleventh District Court of Appeals.  At the status conference conducted

by this Court on May 17, 2005, counsel represented that this appeal remains pending, although set for

oral argument sometime in early June.  It is likely that there will be no decision for at least six months

after argument, if not more.[4]

## II.  DISCUSSION

In the Memorandum Opinion and Order of August 27, 2004 (Doc. No. 54), this Court

discussed at length both Younger and Pullman abstention.  It concluded that Pullman does not apply.

As for Younger, the Court stated:

---

[4]  The second lawsuit filed by the City seems to have remained dormant in the state trial court.

(4:03 CV 2333)

This is a difficult call to make, given the complexity of the proceedings that have already occurred. Here, the Owner had an opportunity to present the state court with the equivalent of the contractual issues in Counts I through V and VII, but voluntarily dismissed those cross-claims just days after filing the instant action. The issues raised in Counts VIII through XIII are new issues which the state court declined to accept when the Owner sought leave to amend its answer in the 1999 foreclosure action. As to Count VI, notwithstanding the Owner's argument that it is not implicated in any state action, this Court believes that it is definitely implicated in the 1999 foreclosure action where the state court will be called on to determine whether or not there was a contract formed between the Boccia defendants and the Owner <u>and</u> whether or not the judgment in the 1996 case in favor of the City was a final judgment upon which it could base a foreclosure action.

Although the Court's first inclination is to allow the state court to resolve these issues, it appears that the state court has either declined that opportunity or, because of the timing of the issues, will never be given the opportunity within the confines of pending actions. The Court is of the view that the Owner should be given an opportunity to pursue its claims, subject to any collateral estoppel or res judicata effects of the state proceedings.

* * *

With respect to the <u>Younger</u> abstention argument, the Court concludes that given the pendency of state court proceedings that are closely related to the issues raised here, the better course would be to stay the instant action until the state court actions are completely resolved. Thereafter, any matter not already resolved by the state court (i.e., any matter that is not collaterally estopped or barred by the doctrine of res judicata) can be resolved by this Court.

Memorandum Opinion and Order (Doc. No. 54), at 19-20 (citing <u>Carroll v. City of Mount Clemens</u>,

139 F.3d 1072, 1075-76 (6th Cir. 1998)).

As a result of that conclusion, the Court stayed all action in this case and proceeded only with

the companion case, No. 4:04CV784. The Court also noted that "it would be in all parties' best

(4:03 CV 2333)

interests to find a way, sooner rather than later, to reach a global settlement of all federal and state

proceedings[.]"  Doc. No. 54, at 23.

Nine months have now passed and still there is no action.  The parties continually represent to

the Court that they are ever closer to settling this on their own; but the Court does not believe that.

Rather, it appears that both parties and counsel are content to let this case fester and/or to devote only

minimal time to getting it resolved, as evidenced by the fact that counsel for the Boccia defendants did

not even bother to show up for the status conference and made no effort to move to be excused or to

attend by telephone.

In the meantime, this Court has on its docket a case fast-approaching two years old which

contains one, and only one, genuine federal claim (Count IX of the amended complaint) with all the

other claims having already been raised in state court and many of them still pending in a state appeal.

The only claim this Court really needs to be concerned about from a statute of limitations

perspective is the Section 1983 claim.  Accordingly, the Court now revisits its earlier decision to deny

dismissal on the basis of abstention.  In light of the glacial speed at which the parties have pursued this

case and in light of the pendency of state actions which should resolve all but the Section 1983 claim,

the Court hereby decides to dismiss without prejudice, on the basis of Younger abstention, all but

Count IX of the amended complaint.  The Court is of the view that it really could dismiss Count IX as

well, but will not do so in an abundance of caution.

The Court also now lifts the stay with respect to Count IX and will proceed on that claim alone.

(4:03 CV 2333)

### III.  CONCLUSION

For the reasons set forth above, the stay is lifted.  All counts but Count IX of the amended complaint are dismissed without prejudice on the ground of <u>Younger</u> abstention.  The Court will proceed with Count IX as set forth in the following paragraph.

The fact discovery cutoff is August 12, 2005.  Summary judgment motions are due on August 26, 2005, with responses due September 9, 2005 and replies, if any, due September 16, 2005.  The case is placed on the standby trial list for the two-week period beginning December 12, 2005 and it may be consolidated with Case No. 4:04 CV 784 for purposes of trial.  That is a matter that will be decided later.

IT IS SO ORDERED.

  May 18, 2005                                                 *s/ David D. Dowd, Jr.*
Date                                                                    David D. Dowd, Jr.
                                                                         U.S. District Judge